## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

**In re:**

**East Town Management, LLC,**

**Debtor.**

**Case No. 24-**
**Chapter 11 (Subchapter V)**

## MOTION FOR APPROVAL TO USE CASH COLLATERAL
## AND GRANT ADEQUATE PROTECTION

East Town Management, LLC (the "Debtor") moves for approval to use cash collateral and to provide adequate protection under § 363(c)(2)(B) and (3) of the Bankruptcy Code, and Fed. R. Bankr. P. 4001(b) (this "Motion"). In support of this Motion, the Debtor states:

### Cash Collateral Rule 4001(b)(1)(B) Concise Statement of Relief Requested

*(i)*   *Entity with an interest in cash collateral:* Lima One Capital, LLC; Secured Lender Solutions

*(ii)*   *Purposes for the use of cash collateral:* Continued operation of the Debtor's business without interruption. Fully described in Sections II-III.

*(iii)*   *Material terms, including duration, of the use of the cash collateral:* The Debtor seeks authority to use cash collateral to allow continuous operation of its business during the pendency of these bankruptcy cases. Fully described in Sections II-III.

*(iv)*   *Any liens, cash payments, or other adequate protection that will be provided to each entity with an interest in the cash collateral:* Replacement liens in the same priority and to the same extent as existed pre-petition; extension of liens as allowed under the Bankruptcy Code; monthly interest payments as provided in Exhibit A; reporting requirements. Fully described in Section IV.

### Jurisdiction

1.     On February 26, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is continuing to operate its businesses and manage its affairs as a debtor-in-possession under §§ 1107(a) and 1108 of the Bankruptcy Code.

2. The Court has jurisdiction over this matter pursuant to §§ 157 and 1334, and the order of reference filed in this District entered pursuant to §157(a).

3. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) (M) as a matter with respect to each Debtor's use of cash collateral.

### Background on Debtor's Business

1. The Debtor was organized August 18, 2011. The Debtor is a single member entity. The sole member is Christopher Knight.

2. The Debtor owns 27 houses and apartments that it rents to tenants throughout Milwaukee, Racine, and Elm Grove. The Debtor has approximately 58 units. There are 27 units that are currently vacant.

3. Historically, the Debtor has also earned income acting as a general contractor or consultant on projects and commissions from sales of real estate under Mr. Knight's license. The majority of the Debtor's income is earned through its rental properties.

4. The Debtor purchased 21 distressed properties with hard money and refinanced them through loans with Lima One.

5. The real estate was packaged into eight groups with each loan issued as the properties were acquired by the Debtor.

6. The Debtor granted Lima One various mortgage liens on the real estate to secure the loans. The loans are further secured by security agreements.

7. The Debtor owns six other properties that were financed from loans or through land contracts with other lenders. The lien holders on the six other properties are Home Rehab Lending, Matt Happ, and Markos Ramirez. The Debtors do not believe that these other lenders have any interest in cash collateral.

2

8.     In 2022, the Debtor began to experience cash-flow problems following a dispute with one of its hard money lenders. Unable to reach a resolution on the dispute, the lender instituted litigation that triggered defaults under the Debtor's other lending agreements. The litigation also prevented the Debtor from obtaining favorable terms for financing terms further hampering operations.

9.     Ultimately, the Debtor was unable to stay current and defaulted on its payment obligations to Lima One.

10.     Following payment defaults by the Debtor, Lima One commenced multiple lawsuits seeking to foreclose on various properties.

11.     The Debtor filed for protection under chapter 11 to preserve the estate's interest in the real estate, consolidate the litigation, and reorganize for the benefit of its creditors.

**Facts Regarding Debtor's Secured Claims**

12.     The Debtor has the following eight loans with Lima One secured by different packages of collateral:

a.     The Debtor entered into a loan agreement for $245,000 with Lima One dated July 28, 2020 ("Loan No. 1"). As security for Loan No. 1, the Debtor executed and delivered mortgages against real property located at 1931 S. 59th Street, West Allis, Wisconsin and 2510 W Juneau Avenue, Milwaukee, Wisconsin ("Loan 1 Real Estate"). As additional security, the Debtor executed and delivered to Lima One a Commercial Mortgage, Security Agreement and Fixture Filing dated July 28, 2020 (the "Loan 1 Security Agreement"). Through these, the Debtor granted Lima One a lien against essentially all of the Debtor's interest in the Loan 1 Real Estate: real property and personal property, including rents and accounts (collectively, "Loan 1 Collateral").

3

b.   The Debtor entered into a loan agreement for $104,300 with Lima One dated July May 21, 2021 ("Loan No. 2"). As security for Loan No. 2, the Debtor executed and delivered mortgages against real property located at 3282-3284 N 30th Street and 2417-2419 W Greenfield Avenue, Milwaukee, Wisconsin ("Loan 2 Real Estate"). As additional security, the Debtor executed and delivered to Lima One a Commercial Mortgage, Security Agreement and Fixture Filing dated May 21, 2021 (the "Loan 2 Security Agreement"). Through these, the Debtor granted Lima One a lien against essentially all of the Debtor's interest in the Loan 2 Real Estate: real property and personal property, including rents and accounts (collectively, "Loan 2 Collateral").

c.   The Debtor entered into a loan agreement for $390,980 with Lima One dated November 18, 2021 ("Loan No. 3"). As security for Loan No. 3, the Debtor executed and delivered mortgages against real property located at 3339-3341 W Juneau Avenue and 420-422 N 29th Street, Milwaukee, Wisconsin ("Loan 3 Real Estate"). As additional security, the Debtor executed and delivered to Lima One a Commercial Mortgage, Security Agreement and Fixture Filing dated November 18, 2021 (the "Loan 3 Security Agreement"). Through these, the Debtor granted Lima One a lien against essentially all of the Debtor's interest in the Loan 3 Real Estate: real property and personal property, including rents and accounts (collectively, "Loan 3 Collateral").

d.   The Debtor entered into a loan agreement for $187,800 with Lima One dated December 30, 2021 ("Loan No. 4"). As security for Loan No. 4, the Debtor executed and delivered mortgages against real property located at 2475 W Keefe Avenue, 3739 W Kilbourn Avenue and 3046 N 2nd Street, Milwaukee, Wisconsin ("Loan 4 Real Estate"). As additional security, the Debtor executed and delivered to Lima One a Commercial Mortgage, Security

4

Agreement and Fixture Filing dated December 30, 2021 (the "Loan 4 Security Agreement"). Through these, the Debtor granted Lima One a lien against essentially all of the Debtor's interest in the Loan 4 Real Estate: real property and personal property, including rents and accounts (collectively, "Loan 4 Collateral").

  e. The Debtor entered into a loan agreement for $356,250 with Lima One dated March 9, 2022 ("Loan No. 5"). As security for Loan No. 5, the Debtor executed and delivered mortgages against real property located at 2728-2730 N 37th Street, 1556 W Mitchell Street, and 2438-2440 N 51st Street, Milwaukee, Wisconsin ("Loan 5 Real Estate"). As additional security, the Debtor executed and delivered to Lima One a Commercial Mortgage, Security Agreement and Fixture Filing dated March 9, 2022 (the "Loan 5 Security Agreement"). Through these, the Debtor granted Lima One a lien against essentially all of the Debtor's interest in the Loan 5 Real Estate: real property and personal property, including rents and accounts (collectively, "Loan 5 Collateral").

  f. The Debtor entered into a loan agreement for $351,250 with Lima One dated March 31, 2022 ("Loan No. 6"). As security for Loan No. 6, the Debtor executed and delivered mortgages against real property located at 4703 W Montrose Avenue, 3223 N 16th St, 3901-3907 N Port Washington Rd, and 747 S 23rd Street, Milwaukee, Wisconsin ("Loan 6 Real Estate"). As additional security, the Debtor executed and delivered to Lima One a Commercial Mortgage, Security Agreement and Fixture Filing dated March 31, 2022 (the "Loan 6 Security Agreement"). Through these, the Debtor granted Lima One a lien against essentially all of the Debtor's interest in the Loan 6 Real Estate: real property and personal property, including rents and accounts (collectively, "Loan 6 Collateral").

  g. The Debtor entered into a loan agreement for approximately $235,000 with Lima

One, on or about, May, 2022 ("Loan No. 7"). Upon information and belief, as security for Loan No. 7, the Debtor executed and delivered mortgages against real property located at 2963 N. 36th Street, 3920 N. 22nd St., and 1970 S 15th Street, Milwaukee, Wisconsin (the "Loan 7 Real Estate"). Upon information and belief, the Debtor executed and delivered to Lima One a Commercial Mortgage, Security Agreement and Fixture Filing dated on or about the same date as the mortgages (the "Loan 8 Security Agreement") with the same terms as prior security agreements for the earlier loans. Through these, the Debtor granted Lima One a lien against essentially all of the Debtor's interest in the Loan 7 Real Estate: real property and personal property, including rents and accounts (collectively, "Loan 7 Collateral").

h. The Debtor entered into a loan agreement for approximately $95,000 with Lima One, on or about, September, 2022 ("Loan No. 8"). Upon information and belief, as security for Loan No. 8, the Debtor executed and delivered a mortgage against real property located at 3419 W Juneau, Milwaukee, Wisconsin (the "Loan 8 Real Estate"). Upon information and belief, the Debtor executed and delivered to Lima One a Commercial Mortgage, Security Agreement and Fixture Filing dated on or about the same date as the mortgages (the "Loan 8 Security Agreement") with the same terms as prior security agreements for the earlier loans. Through these, the Debtor granted Lima One a lien against essentially all of the Debtor's interest in the Loan 8 Real Estate: real property and personal property, including rents and accounts (collectively, "Loan 8 Collateral").

13. The Debtor has two hard money loans with Matt Happ ("Happ". The first loan in the amount of $50,000 is secured by a mortgage lien against real property located at 2900 N 17th Street, Milwaukee, Wisconsin ("Happ Loan 1 Collateral"). The second loan in the amount of $50,000 is secured by a mortgage lien against real property located at 2729 N. 20th Street,

6

Milwaukee, Wisconsin ("Happ Loan 2 Collateral").

14. The Debtor has three loans with Home Rehab Lending ("HRL"). The first loan in the amount of $95,000 is secured by a mortgage lien against real property located at 1729 Linden, Racine, Wisconsin ("HRL Loan 1 Collateral"). The second loan in the amount of $50,000 is secured by a mortgage lien against real property located at 1812 N. 23rd, Milwaukee, Wisconsin ("HRL Loan 2 Collateral"). The third loan is secured by a mortgage lien against real property located 1005 Lone Tree, Elm Grove, Wisconsin ("HRL Loan 3 Collateral").

15. The Debtor has one hard money loan with Markos Ramirez ("Ramirez"). The loan is secured by a second mortgage lien against the real property located at 1005 Lone Tree, Elm Grove, Wisconsin (the "Ramirez Loan Collateral").

16. Search of the Wisconsin Department of Financial Institutions returned a financing statement in the name of Secured Lender Solutions ("SLS"), filing number 202302230000097-0. The Debtor does not have any recollection of doing business with Secured Lender Solutions.

17. The financing statement asserts an interest in all of the Debtor's assets including accounts, deposit accounts, and all other tangible and intangible personal property. SLS is receiving notice of this motion and, as explained below, a replacement lien as adequate protection of its security interest.

18. Based upon review of available documents, any assets acquired by the Debtor after the Petition Date – including without limitation all of Debtor's cash, account receivables, inventory, chattel paper, general intangibles, and all related replacements, accessions, products, and proceeds therefrom acquired after the Petition Date or hereafter acquired ("Post-Petition Collateral") – are cash collateral of Lima One.

19. The documents referred to in this motion are being filed with the Bankruptcy

7

Court in a separate supplement in support of this motion and are not being served on interested parties by mail. The supplement can be obtained from the Clerk of the Bankruptcy Court or from the undersigned counsel of the Debtor.

## I. Debtor's Cash Collateral

20.     The Debtor's records show the following cash collateral (the "Cash Collateral") as of the close of business on February 26, 2024:

| Description | Amount |
|---|---|
| Cash On Hand | $1,300 |
| Bank Accounts | |
| Spring Bank (Checking) | $100 |
| JP Morgan Chase Bank (Business Checking) | $29.35 |
| JP Morgan Chase Bank (Business Checking) | $0 |
| JP Morgan Chase Bank (Business Checking) | $100 |
| Accounts Receivable – Estate Property (considered uncollectable) | $10,000 |

21.     Based on a preliminary review of the Debtor's internal documents, the Debtor granted Lima One a first priority security interests in the Cash Collateral, which includes the Post-Petition Collateral, and any cash collateral related thereto.

22.     By this motion, the Debtor seeks authority pursuant to § 363(c)(2)(B) of the Bankruptcy Code to use the Cash Collateral during the pendency of the Debtor's case.

23.     The Debtor further seeks approval of adequate protection for the secured claims of the Loan 1 Collateral, Loan 2 Collateral, Loan 3 Collateral, Loan 4 Collateral, Loan 6 Collateral, Loan 7 Collateral, Loan 8 Collateral, Happ Loan 1 Collateral, HRL Loan 1 Collateral, HRL Loan 2 Collateral, HRL Loan 3 Collateral, Ramirez Loan Collateral (together with the Cash Collateral the "Collateral").

8

## II.     Proposed Adequate Protection

24.     The Adequate Protection proposed by the Debtor is summarized below:

a.     *Replacement Liens.* The Debtor will grant Lima One, SLS, Happ, HRL, and Ramirez, replacement liens of the same priority to the same extent in their respective collateral, as described in this motion, as the lenders had before the Petition Date (collectively, "Replacement Liens"). The Replacement Liens offered will be deemed automatically perfected upon entry of an order granting this Motion without the necessity of any of the lenders taking possession, filing financing statements, mortgages or other documents. The lender shall not be entitled to improve their secured position as a result of the Replacement Liens.

b.     *Extension of Pre-Petition Liens*. The lenders' respective liens on the Cash Collateral pursuant to the pre-petition loan documents will extend to the Post-Petition Collateral and the products and proceeds thereof under § 552(b) of the Bankruptcy Code.

c.     *Adequate Protection Payments.*  As further adequate protection for the Debtor's use of the respective collateral, the Debtor shall make interest only payments on the estimated secured claims as of the Petition Date as outlined in Exhibit A to this Motion (the "Adequate Protection Payments").[1] To the extent that any of the secured claims are later determined to be less than the estimated amounts listed on Exhibit A, the portion of any Adequate Protection Payments that exceeds interest

---

[1] The Debtor is not offering Adequate Protection Payments on all of the secured claims. Specifically, the Debtor **does** **not** include the loans secured by the Loan 5 Collateral, Loan 6 Collateral, HRL Loan 1 Collateral, Happ 1 Loan Collateral, Happ 2 Loan Collateral, or Ramirez Loan Collateral. These secured claims will still receive Replacement Liens. The Debtor intends on contacting the lenders as soon as practical to discuss treatment of their claims.

9

only on the actual secured claim shall be applied pursuant to the terms of a confirmed plan of reorganization. Adequate Protection Payments will commence the first day of the first month following entry of an order approving this Motion and continue the first day of each subsequent month until further order.

d. *Reporting.* The Debtor will provide reports of their receipts and distributions consistent with the monthly reporting requirements for chapter 11 cases.

e. *Insurance.* The Debtor will continue to maintain general property and liability coverage consistent with their coverage before the Petition Date and requirements under the pre-petition loan documents with respect to the collateral.

f. *Other.* The Debtor will comply with all loan terms, except to the extent that any term conflicts with the Bankruptcy Code or with any other order of the Court.

### III.    Legal Authority for Relief Requested

25.    Pursuant to the Bankruptcy Code, a debtor cannot use cash collateral unless it has consent from the entity that has an interest in cash collateral, or "the court, after notice and a hearing authorizes such use." § 363(c)(2)(B). Cash collateral includes a debtor's "cash, negotiable instruments, documents of title, securities, deposit accounts, [including] the proceeds, products, offspring, rents, or other profits of property… ." § 363(a).

26.    Expenditures and use of the Cash Collateral will preserve and maintain the Debtor's business, thus allowing it to continue providing additional adequate protection to the lenders. Without the ability to use the Collateral, the Debtor would eventually be forced to liquidate its business, which would unjustifiably jeopardize the interests of the estate and creditors.

27.    The Bankruptcy Code does not define "adequate protection," but § 361 provides

10

examples such as (a) cash payments to the extent the collateral is decreasing in value, (b) giving the secured lender replacement liens on the collateral, and (c) granting other relief as will result in giving the secured lender the indubitable equivalent of the lender's interest in the collateral.

28.     The purpose of adequate protection is to guard against diminution in the value of a secured creditor's collateral and to preserve the secured creditor's position as of the date the bankruptcy was filed. *See Resolution Trust Corp. v. Swedeland Dev. Group, Inc.*, 16 F.3d 552, 564 (3rd Cir. 1994).

29.     In this case, the Debtor is proposing to use the Collateral by providing replacement liens and making Adequate Protection Payments of interest as set forth in Exhibit A and complying with the non-monetary terms of the Loan Documents that exclude solvency-related covenants or other provisions contrary to the Bankruptcy Code or any order of the Court.

30.     The proposed Adequate Protection Payments and Replacement Liens will protect the secured lenders from diminution of the value of their Collateral. The Debtor submits that the Adequate Protection proposed in this motion is fair and reasonable.

31.     The Debtor's use of the Collateral will not prejudice any party in interest because, absent the authorization to use such Collateral, the Debtor's operations would quickly shut down. Accordingly, the interests of the secured creditors (and other creditors in the Debtor's case) will be best served by permitting the Debtor to use the Collateral.

32.     The Debtor request approval of their use of cash collateral and adequate protection on a final basis and request that the Court set a hearing on final approval as provided in Fed. R. Civ. P. 4001(b). The Debtor has submitted a Proposed Order granting approval on a final basis.

## Conclusion

Wherefore, the Debtor request approval of its use of cash collateral and grant of adequate protection on a final basis on the terms as specified in this motion and other relief as is just.

Dated: February 27, 2024.

/s/ Evan P. Schmit
Evan P. Schmit
Gregory M. Schrieber
Kerkman & Dunn
Proposed Attorneys for the Debtor

<u>P.O. Address</u>:

839 N. Jefferson St., Suite 400
Milwaukee, WI 53202-3744
Phone: 414.277.8200
Facsimile: 414.277.0100
Email: eschmit@kerkmandunn.com

| Address: | Creditor | Loan Package: | Loan Balance: | Estimated FMV | Estimated FMV | Interest Rate | Proposed Adequate Protection Payment |
|---|---|---|---|---|---|---|---|
| 1931 S. 59th St. | Lima One | 1 | $ 112,000.00 | $ 115,000 | $ 174,000 | 7.0% | $ 1,015.00 |
| 2510 W. Juneau Ave. | | | $ 105,000.00 | $ 59,000 | | | |
| 3282 N. 30th St. | Lima One | 2 | $ 60,000.00 | $ 42,000 | $ 137,000 | 5.60% | $ 639.33 |
| 2417 W. Greenfield | | | $ 57,000.00 | $ 95,000 | | | |
| 3339 W. Juneau | Lima One | 3 | $ 87,000.00 | $ 65,000 | $ 324,000 | 5.850% | $ 1,579.50 |
| 420 N. 29th St. | | | $ 106,000.00 | $ 75,000 | | | |
| 3919 W. Cherry St. | | | $ 74,000.00 | $ 45,000 | | | |
| 1537 N. 37th St. | | | $ 105,000.00 | $ 71,000 | | | |
| 1548 S. 9th St. | | | $ 75,000.00 | $ 68,000 | | | |
| 2475 W. Keefe | Lima One | 4 | $ 56,000.00 | $ 30,000 | $ 152,000 | 5.45% | $ 690.33 |
| 3739 W. Kilbourn | | | $ 66,000.00 | $ 62,000 | | | |
| 3046 N. 2nd St. | | | $ 67,000.00 | $ 60,000 | | | |
| 2963 S. 36th St. | Lima One | 7 | $ 73,000.00 | $ 54,000 | $ 185,000 | 7.50% | $ 1,156.25 |
| 3920 N. 22nd St. | | | $ 94,000.00 | $ 75,000 | | | |
| 1970 S. 15th St. | | | $ 68,000.00 | $ 56,000 | | | |
| 3419 W. Juneau | Lima One | 8 | $ 95,000.00 | $ 87,000 | $ 122,000 | 7.3% | $ 742.17 |
| 1005 Lone Tree Rd. | HRL | | $ 750,000.00 | $ 621,000 | $ 621,000 | 9.5% | $ 4,916.25 |